IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **Allstate Insurance Company et al.,**             **Plaintiffs,**         v.  **Pennsylvania Chiropractic Services Corp. et al.,**             **Defendants.** | CIVIL ACTION   NO. 16-1318 |

**MEMORANDUM RE: Motion to Dismiss Counterclaims**

**Baylson, J.**                                                                                      **October   24  , 2016**

## I.   Introduction

This case relates to an alleged scheme by various chiropractic clinics to collect reimbursement from Allstate Insurance Company by submitting false medical records and invoices. Certain defendants advanced counterclaims against Allstate alleging that Allstate failed to reimburse the clinics for reasonable medical services provided, which Allstate now seeks to dismiss. For the reasons outlined below, Allstate's Motion to Dismiss is granted in part, and denied in part.

## II.   Procedural Background

On March 22, 2016 Allstate Insurance Company, Allstate Indemnity Company, Allstate Property and Casualty Insurance Company, and Allstate Fire and Casualty Insurance Company (collectively, "Allstate"), filed an action alleging that various chiropractic facilities and individuals associated with those facilities perpetrated a scheme to defraud Allstate by submitting false medical records and invoices seeking reimbursement under laws and regulations governing automobile insurance in Pennsylvania, Florida, Kentucky, and Massachusetts.

On August 15, 2016, after withdrawing their Motion to Dismiss, Defendants answered Allstate's Complaint. In addition, defendants Pennsylvania Chiropractic Services d/b/a

Philadelphia Chiropractic & Sports Medicine, Brian Elias DCM LLC, Elias Chiropractic & Sports Medicine Centers LLC, Kentucky Chiropractic Corp. d/b/a BIG A Chiropractic, Big City Chiropractic and Sports Injury, Inc., and Brian Elias, D.C. (collectively referred to as "Counterclaim Plaintiffs") advanced several counterclaims against Allstate. ECF 48. On September 6, 2016, Allstate moved to dismiss the counterclaims. ECF 51. Counterclaim Plaintiffs responded on September 23, 2016 (ECF 52) and Allstate filed a reply on September 30, 2016. ECF 54. Allstate's Motion is currently before the Court.

### III. Factual Background

Taking Counterclaim Plaintiffs' allegations as true, as is required at this stage, the pertinent factual background is as follows. Counterclaim Plaintiff Brian Elias, D.C. is the owner of multiple chiropractic facilities. See Counterclaim Complaint, ECF 48, at ¶ 7. Dr. Elias's facilities include the remaining Counterclaim Plaintiffs, as well as additional facilities that were not named as defendants by Allstate, which Counterclaim Plaintiffs refer to as "Bal Harbor, Florida; Fort Myers, Florida; Louisville, Kentucky; and Beantown, Massachusetts." Id.

Counterclaim Plaintiffs allege that for some patients treated at one of Dr. Elias's facilities that were insured by Allstate, Allstate denied payment for "reasonable and necessary services rendered." Counterclaim Plaintiffs attach a list of such patients to their Complaint at Exhibit A. They allege that Allstate "denied coverage based solely on the provider, not the patient's actual physical injuries, statements, records or independent medical evaluations" in order to "create a chilling effect on Plaintiff Facilities' business, patient base, and the chiropractic industry as a whole." Counterclaim Plaintiffs claim that "Allstate has repeated this conduct throughout the country in an attempt the chill the use of chiropractic care, avoid payment for necessary and reasonable medical care provided, and to pressure individual chiropractic facilities to close."

Counterclaim Plaintiffs claim $1,568,000.20 in total damages under the no-fault automobile insurance laws of Pennsylvania, Massachusetts, Kentucky, and Florida. Under these laws, Counterclaim Plaintiffs seek to recover Personal Injury Protection ("PIP") benefits owed to patients they treated who were insured by Allstate.

## IV. Legal Standards

Allstate states in its Motion that it seeks dismissal of Counterclaim Plaintiffs' claims under Federal Rule of Procedure 12(b)(6) for failure to state a claim. In addition, the substance of the briefing also raises questions of standing. A motion to dismiss for lack of standing is "properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." Ballentine v. United States, 486 F.3d 806, 810 (3d Cir. 2007). The Court therefore applies the following legal standards in considering this motion.

### 1. Rule 12(b)(6)

A motion to dismiss for failure to state a claim tests the sufficiency of a complaint. Fed. R. Civ. P. 12(b)(6); Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). In evaluating a motion to dismiss, the court must view factual allegations in a light most favorable to the plaintiff, drawing all reasonable inferences therefrom. Buck v. Hamilton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2002).

The United States Supreme Court has established a two-part test to determine whether to grant a motion to dismiss. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). First, the court must ascertain whether the complaint is supported by well-pleaded factual allegations. Iqbal, 556 U.S. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Twombly, 550 U.S. at 555; see also Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).

Taking the well-pleaded facts as true, the court must then determine whether the plaintiff is "plausibly" entitled to relief. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). That is, the pleadings must contain enough factual content to allow a court to make "a reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 679. In short, a complaint must not only allege entitlement to relief, but must also demonstrate such entitlement with sufficient facts to push the claim "across the line from conceivable to plausible." Id. at 683; accord Holmes v. Gates, 403 F. App'x 670, 673 (3d Cir. 2010).

### 2. Rule 12(b)(1)

Only a facial challenge to standing, as opposed to a factual challenge, may be considered at the motion to dismiss stage. In re Schering Plough Corp. Intron/Temodar Consumer Class Action, 678 F.3d 235, 243 (3d Cir. 2012). When considering a facial challenge to standing, a court applies much the same standard of review as it does to 12(b)(6) motions. See Baldwin v. Univ. of Pittsburgh Med. Ctr., 636 F.3d 69, 73 (3d Cir. 2011). "With respect to 12(b)(1) motions in particular, the plaintiff must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims (here, the right to jurisdiction), rather than facts that are merely consistent with such a right." In re Schering Plough Corp., 678 F.3d at 243 (quoting Stalley v. Catholic Health Initiatives, 509 F.3d 517, 521 (8th Cir. 2007)).

## V. Discussion

Allstate's raises several arguments in its Motion to Dismiss the counterclaims filed against it. The arguments can be grouped into two categories. First, Allstate argues that Counterclaim Plaintiffs have improperly included counterclaims by non-parties. Second, Allstate argues that Counterclaim Plaintiffs have failed to state a claim under each of the state no-fault laws.

4

1. **Claims Brought by Non-Parties**

   Allstate argues that Counterclaim Plaintiffs have improperly included counterclaims by non-parties based on debts allegedly owed by Allstate to clinics that are not defendants – Edison Chiropractic LLC and Beantown Chiropractic Corp. Allstate maintains that in order to bring claims based on those alleged debts, the non-party clinics must file a Motion to Intervene. Counterclaim Plaintiffs respond that they are not attempting to add parties to the litigation without filing a Motion to Intervene, but are permitted to include the debts to the non-party clinics in their counterclaims because Defendant Dr. Brian Elias is the owner of all chiropractic facilities mentioned in their counterclaims. Allstate replies that Dr. Elias's ownership of the clinics does not confer standing to assert claims on their behalf because the alleged debts are owed to the clinics as distinct legal entities.

   The claims implicated by this argument are claims under the Massachusetts No-Fault Law (Count Two) and the Florida Motor Vehicle No-Fault Law (Count Four). The allegations in these claims are vague as to whose rights are being asserted, and on what basis. For example, the Counterclaim Complaint defines "Count Four Plaintiffs" as "Plaintiffs Brian Elias DCM LLC, Elias Chiropractic & Sports Medicine Centers LLC, and Brian Elias, D.C. as owner of the Bal Harbor, Florida, and Fort Myers, Florida, chiropractic facilities." The Counterclaim goes on to state that "Allstate's insured provided permission and authority to Count Four Plaintiffs to seek reimbursement for services rendered from Allstate, assuming the position and legal status of the patient in its contract with Allstate." The allegations made in Count Two under the Massachusetts No-Fault Law are nearly identical.

   These allegations are not specific enough to establish standing to assert claims for patients treated in the non-party clinics under Rule 12(b)(1). See In re Schering Plough Corp.,

5

678 F.3d at 243 ("[T]he plaintiff must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims . . . ."). Liberally construing the above allegations, Counterclaim Plaintiffs appear to be asking this Court to treat all of the clinics as one legal entity, which were collectively "granted permission and authority" by patients to pursue claims under the Florida Law. There is no distinction made between the debts owed to the party-clinics and the non-party clinics. If Counterclaim Plaintiffs wish to establish Dr. Elias's standing to pursue claims based on debts allegedly owed to the clinics that he owns, they should be more specific in their allegations so as to "plausibly suggest" that Dr. Elias has such a right. A conclusory allegation that Dr. Elias is "the owner" of all of the clinics, and a general allegation that clinics and Dr. Elias collectively have the authority to pursue these claims is insufficient.

Therefore, any claims based on debts allegedly owed to clinics that are not party to this action are DISMISSED WITHOUT PREJUDICE.

2. **Failure to State a Claim under State No-Fault Laws**

   a. Kentucky

Allstate argues that under binding Kentucky precedent, Counterclaim Plaintiffs do not have standing to bring counterclaims under the Kentucky Motor Vehicle Reparations Act ("MVRA"), and therefore ask this Court to dismiss Count Three of the Counterclaim Complaint in its entirety.

In support of its argument, Allstate cites a decision by the Supreme Court of Kentucky which interprets the MVRA. See Neurodiagnostics, Inc. v. Kentucky Farm Bureau Mut. Ins. Co. 250 S.W.3d 321 (Ky. 2008), as modified (July 30, 2008). In Neurodiagnostics, the Supreme Court of Kentucky undertook a full analysis of recent amendments to the MVRA to determine whether "a medical provider can have a direct right of action against an automobile insurer for

6

basic reparation benefits by assignment from the insured." Id. at 323. The court concluded that while under the old version of the statute, an insured could assign their rights to a medical provider, "the repeal of the assignment provision took away any direct cause of action by the medical provider, and no other current provision of the MVRA can be construed to afford a direct cause of action to medical providers." Id. at 329-330.

Counterclaim Plaintiffs argue that Neurodiagnostics is not on point, because Counterclaim Plaintiffs are not "mere incidental beneficiaries or optional payees," unlike the Neurodiognostics plaintiffs. See ECF 52 at 10-11. As a result, the Counterclaim Plaintiffs contend that this Court must "decide how the highest court of Kentucky would resolve this state law claim." Id. at 10.

This argument is unpersuasive. To attempt to distinguish the Neurodiagnostics case on its facts misses the larger holding of the case. Neurodiagnostics is a clear interpretation of the precise statute at issue here by the Supreme Court of Kentucky. Counterclaim Plaintiffs do not point to any case which would suggest that Neurodiagnostics is no longer good law, but nevertheless urge this Court to adopt the reasoning of a dissenting opinion in a Kentucky intermediate appellate court which questioned the breadth of the Neurodiagnostics holding.

Contrary to the Counterclaim Plaintiff's contention, this Court does not have to guess how Kentucky state courts would resolve this claim. The Supreme Court of Kentucky concluded that as a result of the repeal of the assignment provision in the statute, there is no direct cause of action available to medical providers under the MVRA. Counterclaim Plaintiffs are medical providers attempting to assert a direct cause of action under the MVRA. This claim is precluded by Kentucky law. Therefore, Count Three of the Counterclaim Complaint is DISMISSED WITH PREJUDICE.

      b. <u>Florida</u>

Allstate argues that Counterclaim Plaintiffs have not complied with the statutory requirements for bringing a claim under Florida's PIP Statute, and as a result, have not stated a claim under that statute.

The Florida Motor Vehicle No-Fault Law exists to "provide swift and virtually automatic payment so that the injured insured may get on with his life without undue financial interruption." <u>Custer Med. Ctr. v. United Auto. Ins. Co.</u>, 62 So. 3d 1086, 1096 (Fla. 2010) (internal emphasis and quotations omitted). As such, the statute provides a mechanism for an insured or asignee to demand payment for benefits owed, and allows a right of action to obtain benefits if the insurer does not promptly respond to the demand. Fla. Stat. § 627.736(10) (2016). Before bringing an action in court, the Florida PIP statute requires a plaintiff to provide "written notice of an intent to initiate litigation" to the insurer. Fla. Stat. § 627.736(10)(a) (2016). The notice provision goes on to specify particular information that must be included in the notice – including the name of the insured, a copy of the assignment of rights, and a description of services provided. Fla. Stat. § 627.736(10)(b).

Counterclaim Plaintiffs do not dispute that they have not complied with this requirement. Rather, Counterclaim Plaintiffs argue that the counterclaims are compulsory, and therefore the notice requirement is excused, and, in any event, the notice requirement is procedural and need not be applied in federal court.

    *(1) Compulsory Counterclaim*

Counterclaim Plaintiffs argue that because their claims are compulsory counterclaims, the notice requirement is excused. Counterclaim Plaintiffs do not cite any case that stands for this

precise proposition, but instead point to cases that state generally that compulsory counterclaims are defined broadly.

Allstate argues that Counterclaim Plaintiffs' claims are not compulsory, and advances two alternative bases for this contention. First, Allstate argues that a claim does not accrue under the Florida PIP Statute until the notice provision is complied with, and a counterclaim cannot be compulsory if it does not exist. Second, Allstate argues that although the counterclaims relate to the original action, they are not the "same basic controversy" as Allstate's RICO and conspiracy claims and therefore are not compulsory.

A claim that has not accrued cannot be compulsory. See In re Kaiser Grp. Int'l Inc., 399 F.3d 558, 568 (3d Cir. 2005) (noting that this maturity requirement is expressly set forth in Federal Rule of Civil Procedure 13(a) which states that "A pleading shall state as a counterclaim any claim *which at the time of serving the pleading* the pleader has against any opposing party"); see also Young v. City of New Orleans, 751 F.2d 794, 801 (5th Cir. 1985) ("A counterclaim acquired by the defendant after he has answered will not be considered compulsory, even if it arises out of the same transaction as does the plaintiff's claim"). These cases make clear that illogical nature of Counterclaim Plaintiffs' argument – the alleged compulsory nature of a claim cannot make a claim mature, because maturity is a required element to make a claim compulsory. Therefore, the notice requirement is not excused on this basis.

*(2) Procedural v. Substantive*

In the alternative, Counterclaim Plaintiffs argue that the notice requirement in the Florida PIP Statute is procedural, and need not be applied in federal court as a result.

A federal court adjudicating state law claims must apply state substantive law and federal procedural law. See Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938). The substantive/procedural

dichotomy of the Erie rule is to be applied with an eye toward ensuring that the outcome of the litigation in federal court will be substantially the same as it would be if tried in a state court. Chamberlain v. Giampapa, 210 F.3d 154, 158-59 (3d Cir. 2000). This outcome-determinative focus is intended to serve the goals expressed by the Supreme Court in Hanna v. Plumer: "discouragement of forum shopping and avoidance of inequitable administration of the laws." Id. (quoting Hanna v. Plumer, 380 U.S. 460, 468 (1965)).

In arguing that the Florida PIP Statute's notice provision is procedural and not substantive, Counterclaim Plaintiffs cite Mace v. Van Ru Credit Corporation, 109 F.3d 338 (7th Cir. 1997). The Mace court held that a notice requirement in a Wisconsin consumer protection statute ("WCA") was procedural and therefore not applicable in federal court. Id. at 345-47. The Seventh Circuit reasoned that the notice requirement at issue "[did] not grant or deny a substantive right (the right to sue under the WCA) . . . [r]ather, it affect[ed] the period within which that right can be exercised." Id. at 346.

Allstate argues that the Seventh Circuit's decision regarding a Wisconsin Statute is immaterial. In support, Allstate cites Shenandoah Chiropractic, P.A. v. National Specialty Insurance Company, in which a federal district court addressed the precise question at issue here and held that the Florida PIP Statute's notice requirement is substantive. 526 F. Supp. 2d 1283, 1287-88 (S.D. Fla. 2007). In reaching this conclusion, the Shenandoah court considered and distinguished the Seventh Circuit's holding in Mace, noting that the Florida statute's "specific notice requirement does not simply specify the time period in which suit may be filed, but rather clearly establishes a condition precedent to filing suit, and the failure to comply with this condition precedent eliminates the availability of a remedy." Id. at 1288. Counterclaim Plaintiffs do not address Shenandoah.

This Court finds <u>Shenenadoah</u> persuasive and will follow its reasoning here.  The Florida PIP Statute expressly establishes a condition precedent that a would-be Plaintiff under the statute must comply with before filing suit.  These requirements are specific, and serve a legislative purpose under the statute beyond just encouraging settlement.  The same provision that provides a right of action under the statute requires certain requirements to be met before an action can be brought.  Without compliance with this requirement, a Plaintiff's right of action is eliminated.  This is an outcome-determinative, substantive requirement, and applies with full effect here.  If the Counterclaim Plaintiffs were permitted to move forward with their claims under this statute in federal court without complying with the requirements set forth in the statute, this would produce precisely the type of "inequitable administration of the laws" that <u>Erie</u> and its progeny seek to prevent.  Counterclaim Plaintiffs do not allege that they have complied with the notice requirement.  Therefore, Count Four of the Counterclaim Complaint is DISMISSED WITHOUT PREJUDICE.[1]

      c.  <u>Pennsylvania and Massachusetts</u>

Allstate argues that Counterclaim Plaintiffs have failed to state a claim under the Pennsylvania Motor Vehicle Financial Responsibility Law (75 Pa. C.S. § 1701, et seq.) and the Massachusetts No-Fault Law (Mass. Gen. Laws ch. 90 § 34M, et seq.).  Allstate's arguments regarding these claims are nearly identical so we will treat them together.

Allstate argues that (1) for at least some of the patients that form the basis of these claims, Allstate has already paid the statutory limit, and (2) Counterclaim Plaintiffs' allegations are not specific enough to state a claim for relief.

---

[1] Allstate argues that some of Counterclaim Plaintiffs' claims under the Florida Statute are barred by res judicata and the prior pending action doctrine.  Because we dismiss the Florida claims on other grounds, we need not reach a decision on these arguments.

Regarding the first argument, Allstate's arguments are factual in nature and are not resolvable at this stage.  Upon a Motion to Dismiss, the Court is bound by the contents of the complaint and any documents integral to the complaint.  It is not apparent from the face of the complaint or the face of Exhibit A that any particular claim is precluded as having already been paid.  This question is factual and cannot be determined by reading the complaint and Exhibit A which is summary in nature and does not contain all pertinent facts.  To agree with Allstate's arguments would require this Court to draw inferences in Allstate's favor, which is not permitted upon consideration of a Motion to Dismiss.

Regarding the second argument, this Court finds that the Counterclaim Plaintiffs have alleged enough facts to state a claim under the Pennsylvania and Massachusetts No-Fault laws.  Both Pennsylvania and Massachusetts No-Fault Laws allow medical providers to seek recovery against an insurer that has not provided PIP benefits required by the statute for reasonable medical expenses.  75 Pa. C.S. § 1711; Mass. Gen. Laws ch. 90 § 34M.  The allegations in Counts One and Two and the other supporting allegations in the Counterclaim Complaint, as well as the chart identifying treated patients establish a plausible claim for relief under the Pennsylvania and Massachusetts statutes.  These allegations are sufficient at this stage.  Allstate's Motion to Dismiss Counts One and Two of the Counterclaim Complaint is therefore DENIED.

## VI.     Conclusion

Allstate's Motion to Dismiss is granted in part and denied in part.  As to Counts One and Two, Allstate's Motion is denied.  As to Counts Three and Four, Allstate's Motion is granted.  Accordingly, Count Three is dismissed with prejudice, and Count Four is dismissed without prejudice.  An appropriate order follows.

O:\CIVIL 16\16-1318 Allstate v Pa Chiropractic\16cv1318 Memo re MTD Counterclaim 10.24.16.docx